## In re ASSESSMENT OF SALES TAX AGAINST KNAPP.

No. 29047. Oct. 24, 1939.

W. A. Barnett, of Okmulgee, for plaintiff in error.

Dick Jones, A. L. Herr, Wendell Barnes, and C. D. Stinchecum, for defendant in error.

RILEY, J. This is an appeal from an order of the Oklahoma Tax Commission overruling the protest of Geo. L. Knapp, doing business as Knapp Advertising Company, and an order assessing sales tax against said protestant.

Protestant is engaged in the advertising business, advertising chiefly by outdoor billboards.

In the proceedings before the Tax Commission the parties entered into a written stipulation as to the facts, from which it appears protestant is a resident of Okmulgee, Okla., with his principal place of business there. He owned billboards and other advertising structures located along the highways in various counties within the state of Oklahoma which he used for the display of advertising matter. Part of the business came to him through contracts between him and nonresidents of Oklahoma. The contracts were entered into outside the state of Oklahoma. The nonresidents with whom protestant contracted had their principal places of business outside the state of Oklahoma and shipped the advertising matter from outside the state which protestant displayed. Other matter displayed was under contracts with residents of the state of Oklahoma.

The stipulation shows that for the period from March 1, 1938, to August 31, 1938, protestant received from said business the total sum of $109,630.07. Of this sum $88,247.37 came from contracts with nonresidents and $21,382.70 came from contracts with residents of Oklahoma.

Protestant had paid to the Tax Commission the sum of $391.72, said payment having been made as a sales tax on gross proceeds for advertising done for residents of the state of Oklahoma.

On December 16, 1938, the Tax Commission demanded from protestant payment of the sum of $1,801.27, as a balance due as sales tax for the period stated, with interest and penalties in the sum of $245.17.

Knapp filed a protest against the assessment or proposed assessment, alleging in substance that the act under which the commission was proceeding is invalid and void in that it violates the Constitution of

the state and certain provisions of the Constitution of the United States; that the act is void for the reason its title is defective; that the act, as proposed to be administered and enforced against him, is discriminatory as against him and others engaged in a similar business; that it would result in taking his property without due process of law; and that he is not liable for the tax on that part of the proceeds of his business derived from nonresident clients as being interstate commerce, and therefore not subject to taxation by the state of Oklahoma.

The State Tax Commission, upon consideratioon of the stipulation and agreed statement of facts, overruled the protest and entered its finding and order to the effect that all the gross proceeds derived from such advertising were subject to the sales tax, and that by reason of the failure of protestant to report and pay said tax within the time provided by law, interest and penalty in the sum of $245.17 had accrued, and ordered assessment made accordingly, in the sum of $1,801.27, tax and interest and penalty thereon in the sum of $245.17.

From this order, protestant prosecutes this appeal.

In his brief, protestant presents but one proposition, viz., that the creation for the purpose of revenue taxation of a general class consisting of all advertising, and the subsequent exempting therefrom gross receipts or gross proceeds from sales of advertising space in newspapers and periodicles, violates constitutional requirement that "taxes shall be uniform upon the same class of subjects."

The act involved is article 20, ch. 66 (H. B. 206) S. L. 1937, 68 Okla. St. Ann. §§ 1249 to 1249W. Section 5 of the act levies an excise tax of two (2%) per centum, except when a greater rate is otherwise provided, upon the gross proceeds or gross receipts derived from the sale, subsequent to May 31, 1937, to consumers or users for use or consumption of: some ten subjects or kinds of property or services. The tenth, or subdivision (J) of said section, is: "Advertising of all kinds, types and characters, including any and all devices used for advertising purposes and the servicing° of the same."

Section 6 of the act specifically exempts 15 classes of property or services from the tax. The 14th exemption found in subdivision (o) of said section is:

"Gross receipts or gross proceeds derived from the sales of advertising space in newspapers and periodicals."

It is this exemption which protestant contends renders the act void as to his business and the business of others of a similar nature.

He contends that the exemption of the class of newspaper and periodical advertisement is arbitrary, without substantial reason, and discriminatory as to him and his business.

Section 13, art. 10, of the Constitution provides that the state may select its subjects of taxation and levy and collect its revenues independent of the counties, cities, or other municipal subdivisions.

Section 12, art. 10, of the Constitution provides that the Legislature shall have power to provide for the levy and collection of excise taxes, and other specific taxes therein named.

Section 5, art. 10, of the Constitution provides that the power of taxation shall never be surrendered, suspended, or contracted away, and that "taxes shall be uniform upon the same class of subjects."

It will thus be seen that the state, through the Legislature, may select its subjects of taxation and classify same, may tax one subject or class and exempt other subjects or classes. Subjects of taxation of the same class must be taxed uniformly.

In Re Gross Production Tax of Wolverine Oil Co.. 53 Okla. 24, 41, 154 P. 362, 367, it is said:

"The power of the state to distinguish, select. and classify objects of taxation has a wide range of discretion. The classification must be reasonable, but there is no precise rule of reasonableness, and there cannot be an exact exclusion or inclusion of persons and things. * * *"

And:

"The rule, however, is not without its limitations, for it is equally well settled that the classification must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis. Is the present act, levying one rate of tax on oil and gas, and a lesser rate on ores bearing lead, zinc, jack, gold, silver, copper, or asphalt, and which omits a gross production tax on coal, in conflict with this rule? Clearly it is not."

And:

"Equally well settled is the rule that it

is competent for the Legislature to arrange and divide the various subjects of taxation into distinct classes, provided the tax is uniform upon all those belonging to the same class and upon which it operates."

Another rule which is well established is that the right to select and classify subjects for taxation being legislative, classification made by the Legislature is presumed to be valid and constitutional. In order to justify judicial interference the classification adopted must be based upon an invidious and unreasonable distinction or difference with reference to the subject of the tax.

Unless this appears, the courts will not declare the classification void, though it may not meet their approval. In re Gross Production Tax of Wolverine Oil Co., supra.

The most that may be said as to any generally accepted rule as to what constitutes a reasonable classification is that the classification must rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed and can never be made arbitrarily and without any such basis. This rule is by no means definite.

It is apparent at once that in many cases difference of opinion will arise as to the reasonableness of the classification, and also as to whether the difference upon which the classification is made to rest bears a reasonable and just relation to the act in respect to which the classification is proposed.

This court in the Wolverine Oil Co. Case, supra, stated in that case there were many good reasons for making the classification there under consideration. Among those pointed out were kind of labor employed, cost of production and marketing. Both of these reasons apply in the instant case. Another reason may be stated as the difference in the methods of carrying on the business. Certainly there is a vast difference in the kind of labor necessarily employed in outdoor or billboard advertising and newspaper and periodical advertising. In billboard advertising, according to the stipulation of the parties, most of the advertising matter which came from without the state was sent to protestants and all that was necessary was to distribute and paste the same on their billboards. No skilled or trained labor is necessary. It is common knowledge that the billboards themselves are roughly constructed of plain or rough material and require no particularly trained or skilled labor in their construction.

On the other hand, it is common knowledge that the business of advertising in newspapers requires expensive machinery, presses, etc., and highly skilled and trained labor. If difference in the kind of labor employed was a good reason for the classification in the Wolverine Oil Co. Case, supra, the same reason is applicable here. The mere fact that protestant is engaged in the advertising business and many newspapers are also engaged in part in the same business does not of itself require that the sales consumer's tax must be made to apply to both alike or to neither. This is clearly pointed out in Ohio River & W. R. R. Co. v. Dittey, 232 U. S. 576, 58 L. Ed. 737. Therein it is said:

"It is contended that the act arbitrarily discriminates against plaintiffs in error and other railroad companies in that (a) it does not include all other public utilities carrying on business within the state; those omitted, as is said, being grain elevators, stockyards, ferries, bridge companies, and innkeepers; and (b), the law does not operate uniformly among the utilities that are taxed, since, on electric light, gas, natural gas, waterworks, telephone, messenger or signal, union depot, heating, coaling and water transportation companies, the tax amounts to 1.2 per cent. of gross intrastate receipts, as to suburban and interurban railroads it is fixed at 1.2 per cent. of gross intrastate earnings, and on express and telegraph companies it is 2 per cent.; while on railroads, including plaintiffs in error, it is 4 per cent. of such earnings, and the same on pipe-line companies.

"Both of these contentions turn upon the familiar question of classification, concerning which so much has been written. We agree with the court below that whether the question be considered in view of the uniformity and equality provisions of the Ohio Constitution, or the 'equal protection' clause of the 14th Amendment, the result is the same; it cannot be said that the classification rests upon no reasonable and sufficient basis of distinction."

Protestant cites Winter v. Barrett, 352 Ill. 441, 186 N.E. 113, 89 A. L. R. 1398, as supporting his contention, and says that it cannot be distinguished from the instant case. It does in a measure support his contention. But it is distinguishable in at least one particular. There the tax was levied against persons engaged in the business of selling tangible personal property at retail.

The act declared that for the purposes thereof tangible personal property did not mean or include farm products sold by the producer thereof or motor fuel as defined by the motor fuel tax law approved March 25, 1929. The tax was not primarily against the consumer as in the instant case. It was held that the Legislature was without power to declare farm products or farm produce and motor fuel not to be tangible personal property so as to exempt persons engaged in the sale thereof from the tax, when it was a matter of common knowledge that farm products and motor fuel were in fact tangible personal property.

Furthermore, Winter v. Barrett, supra, is not entirely in harmony with the policy of this state, and most of the other states where sales of farm products and farm produce, when sold by the producer, are exempted from the payment of the tax here in question. Exemptions from such tax of motor fuel taxed under other provisions of law are now generally upheld. We deem it unnecessary to review the many cases cited. To do so would be but to demonstrate the conflict of opinion on the subject and exemplify what we have already said, that a particular classification may appear entirely reasonble to some minds while to others it my appear unreasonable.

Under the rule stated in the Wolverine Tax Case, supra, it cannot be said that the classification here involved rests upon no reasonable and sufficient basis.

The findings and orders of the Tax Commission are affirmed.

BAYLESS, C. J., WELCH, V. C. J., and OSBORN, CORN, HURST, and DAVISON, JJ.. concur. GIBSON and DANNER, JJ., absent.